UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LESTER DOBBEY (#R-16237),** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | )   No. 11 C 2374 |
| | ) |
| **LIPING ZHANG, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, three former health care providers at the Stateville Correctional Center, violated Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, Plaintiff alleges that he received inadequate care and treatment for chronic back problems. This matter is before the Court for ruling on the parties' cross-motions for summary judgment. [118]; [122]; [160]; [169]. Also before the Court is Plaintiff's motion to file more than eighty statements of fact. [179]. For the reasons stated in this order, the Court grants Plaintiff's motion to file more than eighty statements of fact, [179], grants Defendants' motions for summary judgment, [118] & [122], and denies Plaintiffs' motions for summary judgment [160] & [169].

**LOCAL RULE 56.1**

Together with their motions for summary judgment, Defendants included a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," [121] & [125], as required by circuit precedent. Those notices explained in detail the requirements of the Local Rules

governing summary judgment. The district court may rigorously enforce compliance with Local Rule 56.1 (N.D. Ill.). *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); see also *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have * * * repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, many of Plaintiff's statements of fact are deficient. For example, Plaintiff's entire statement of material facts in support of his motion for summary judgment against Defendant Sheehy is devoid of citations to the record. Local Rule 56.1 requires parties, in pertinent part, to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." In addition, in response to Defendant Sheehy's cross-motion for summary judgment, Plaintiff failed to address specifically each of Defendant Sheehy's numbered statement of facts; instead, he simply submitted his own statement of facts, essentially ignoring Sheehy's.[1]

---

[1] The Court's Local Rules allow only 80 statements of fact, absent prior leave of Court. *See* Local Rule 56.1(a) (N.D. Ill.) Rather than moving to strike Plaintiff's additional statements of fact, the Wexford Defendants simply declined to respond to Plaintiff's Statements 81-103. For the sake of expediency, the Court grants Plaintiff's belated motion for leave to set forth more than 80 statements of fact [179], and will deem those facts uncontested.

Furthermore, legal arguments, suppositions, and conclusions of law are not "facts." See *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts"). "A response to a statement of facts * * * is not the place for purely argumentative denials, * * * and courts are not required to wade through improper denials and legal argument in search of a genuinely disputed fact." *Almy v. Kickert School Bus Line, Inc.*, No. 08 C 2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal citations and punctuation omitted)).

Because Plaintiff is proceeding *pro se*, the Court has granted him some leeway and considered the factual assertions he makes in his summary judgment materials. However, the Court has entertained Plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. Furthermore, the Court has disregarded assertions Plaintiff makes in his summary judgment materials that conflict with his sworn deposition testimony (such as that he was in continuous pain from September 2008 through November 2010). "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007)).

Given the considerations stated above, the Court views the following facts as uncontested for purposes of the summary judgment motions:

**BACKGROUND**

Plaintiff is an Illinois state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. [1] ¶ 4. Both Defendants Parthasarathi Ghosh and Liping Zhang were staff physicians at Stateville at the time of the events giving rise to this lawsuit. *Id.* ¶¶ 11-12. Defendant Joseph Sheehy was a certified medical technician at Stateville during the time period in question. *Id.* ¶ 13; see also [124-2] ¶ 1.

Plaintiff first sought treatment for his back condition on September 30, 2008, during an appointment with physician's assistant LaTonya Williams, who is not a named Defendant. [1] ¶ 25; [119-2] at 16. Although the principal purpose of the appointment was to treat his gastro-intestinal issues, Plaintiff also reported to Williams that he was experiencing back pain. *Id.* at 17. Williams examined Plaintiff and noted his concerns in his medical record, but also indicated that she detected no deformity or swelling, no pain in the lumbar spine, and that she observed full range of motion. See *id.* Williams told Plaintiff that she would schedule a follow-up appointment with a physician within a week, once his lab tests were reviewed. See *id.* at 18-19.

Plaintiff saw Defendant Zhang on October 7, 2008. *Id.* at 19-20. Plaintiff does not believe that Zhang either touched or physically examined his back. *Id.* at. 22-23. Zhang prescribed Flexeril, a pain medication, for Plaintiff's back complaints. [1] ¶ 26; [119-2] at. 21. A few days later, Plaintiff filed a grievance regarding what he perceived to be insufficient treatment. [119-2] at 25.

During a return visit on or about November 22, 2008, Plaintiff told Zhang that the Flexeril was helping his back pain. See *id.* at 26-27; see also [119-3]. Zhang recorded that

Plaintiff's back pain was "positional," that he was not in acute pain, that his gait was steady, and that his range of motion was within normal limits. [170] at 38. During this time period, Plaintiff was able to play basketball. [119-2] at 33.

On March 21, 2009, Plaintiff "blew out" his back during a basketball game when he reached to catch an out-of-bounds ball. *Id.* at 32-33. A medical technician transported Plaintiff by wheelchair to the health care unit for evaluation. [1] ¶ 29. Dr. Zhang examined and treated Plaintiff that same day. *Id.* ¶ 30; [119-2] at 35. Plaintiff told Zhang he thought he might have a slipped disk. [1] ¶ 30.

Zhang tentatively diagnosed Plaintiff with scoliosis (curvature of the spine) and muscle spasms, with no edema (swelling), other deformities, or local tenderness. [1] ¶ 31; [119-2] at 31, 35. Zhang ordered an x-ray of Plaintiff's spine and prescribed him Robaxin, a muscle relaxant. [1] ¶ 31; [119-2] at 37. The x-ray results were "negative" for scoliosis. [1] ¶ 31; [119-2] at 38. Defendants concede, however, that some types of back conditions cannot be diagnosed by x-rays or by simple physical examinations, but rather may require MRIs or CT scans to be seen.[2] [170-1] at 66-67 ¶ 14.

On April 1, 2009, Zhang conducted a routine, biennial physical examination of the Plaintiff. [1] ¶ 34; [119-2] at 39; [119-3] at 22-23. Plaintiff asked Zhang whether he could see a chiropractor in connection with his back problems, but she told him that he did not need a chiropractor because stretching exercises would accomplish the same benefits. [1] ¶¶ 37-39; [119] at 41-42. Zhang also declined to order an MRI or CT scan. Plaintiff maintains that

---

[2] As will be discussed more fully *infra*, the availability of additional diagnostic tests does not necessarily mean that they were warranted.

Zhang told him the associated security procedures were too bothersome [119] at 41-42; Zhang, in contrast, asserts that no additional diagnostic measures were warranted because her examination revealed a normal spine and musculoskeletal system but for mild scoliosis. [176-3] at 1-2; [170-1] at 75 ¶ 16. Afterwards, Plaintiff filed another grievance concerning his medical care. [119-2] at 43-44.

On June 10, 2009, Plaintiff saw Williams again regarding his back complaints. [119-2] at 46. Plaintiff described his pain as if "it w[ere] inside the bone," "on the inner side of the spine." *Id.* at 49-50.) Williams renewed Plaintiff's Flexeril prescription, added a Tylenol prescription, and referred him for a physical therapy evaluation. See i*d.* at 50, 52-53; [1] ¶ 44.

On or about August 18, 2009, Plaintiff had an appointment with Zhang. [119-2] at 58-59. Although Plaintiff's medical notes for that day do not indicate that back issues were discussed, Plaintiff insists that he complained about his back condition, more specifically a "pinch on his spine." *Id.*; [1] ¶ 47. Zhang purportedly refused to address Plaintiff's back problems, telling him, "You are only here for abdominal [issues]." *Id.* ¶ 48; [119-2] at 56. Zhang's facial expression gave Plaintiff the impression that she was irritated with him. [119-2] at 57. Zhang renewed Plaintiff's "nerve" medication, as well as other prescriptions. [1] ¶ 50. There is no indication in the record that Plaintiff saw Zhang again after this date.

On August 27, 2009, Plaintiff "blew out" his back again while in his cell. [119-2] at 60-61; [1] ¶ 51. Plaintiff experienced pain, swelling, and momentary paralysis. [1] ¶ 51. Defendant Sheehy carried Plaintiff by stretcher to see Defendant Ghosh for evaluation of the back injury. *Id.* ¶ 53; [119-2] at 101. This was the first time that Plaintiff saw Ghosh concerning his back problems. [119-2] at 61. Ghosh wrote in Plaintiff's medical record:

"Back. L[eft] paraspinal muscle in mid-thoracic area in spasm. Painful left lat[eral] rotation of spine, flexion & extension of spine painful on L[eft] side at thoracic area. No neurological deficit." [119-3] at 38. Ghosh issued Plaintiff a lower bunk permit and a food lay-in; he additionally prescribed Robaxin (another muscle relaxant/muscle spasm inhibitor) and Tylenol. *Id.*; [1] ¶ 55; [119-2] at 65-66.

Ghosh reportedly told Plaintiff that he would see Plaintiff for a follow-up visit in thirty days; however, he failed to make any such notation to that effect in Plaintiff's medical record. [119-2] at 66; [1] ¶ 55. Plaintiff therefore had no follow-up in thirty days. [1] ¶ 55.

On October 16, 2009, Plaintiff saw physician's assistant Williams again. [119-2] at 71-72; [1] ¶ 58. Williams' treatment note indicated that she would discuss Plaintiff's back condition with Dr. Ghosh. [119-2] at 73-74; [119-3] at 39-40. Plaintiff interpreted that entry to mean that Williams intended to refer Plaintiff to Ghosh for follow-up treatment. [119-2] at 73-74. No follow-up with Ghosh was scheduled, however. [1] ¶ 59.

Physical therapy was ordered for Plaintiff following the appointment with Williams. [1] ¶ 61; [119-2] at 79. The physical therapy regimen ran from February 2010 through April 2010. [1] ¶ 61; [119-2] at 77, 79. The physical therapist's final report indicated that Plaintiff had made good progress, that his pain had significantly decreased, that all goals set at the initial evaluation had been achieved, and that discharge from the physical therapy program was appropriate.[3] [119-2] at 81; [119-3] at 41.

---

[3]

Plaintiff has provided no basis for his assertion that the physical therapy did not help him, and that the report was inaccurate. Plaintiff has failed to include a reference to the record calling into question Defendants' properly supported statement of fact. First, unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Johnson v. McCann*, No. 08 C 4684, 2010 WL 2104640, *1 (N.D. Ill. May 21, 2010). "Under settled law, facts asserted in a brief but not

On November 15, 2010, Plaintiff threw out his back a third time, once again experiencing pain and swelling. [119-2] at 86; [1] ¶ 62. A correctional officer contacted the health care unit and spoke to Defendant Sheehy. [119-2] at 103-04; [124-2] ¶ 2. The officer advised Sheehy that Plaintiff was ambulatory. [124-2] ¶ 2. According to Sheehy, under Department rules, if an inmate suffers from chronic back pain, no "emergency response" is necessary so long as the inmate is ambulatory. *Id.* ¶ 3. Sheehy reviewed Plaintiff's medical records and confirmed that he had pain medication.[4] *Id.*, ¶¶ 4-5. Sheehy therefore determined that Plaintiff's back spasm did not require urgent treatment. *Id.* ¶ 5. After the phone call, Sheehy added Plaintiff's name to the "sick call" list and relayed to Plaintiff through the officer that he should take his prescribed pain medication in the meantime. *Id.* ¶ 4; [119-2] at 106-07. Admittedly, Sheehy never personally checked on Plaintiff to assess his condition firsthand, deeming it unnecessary. See [124-2] ¶ 4. Plaintiff received no medical treatment that day or the next. [1] ¶ 69.

In response to Plaintiff's ensuing grievance, Sheehy explained that Plaintiff was already in possession of pain medication; Sheehy further noted that he decided no emergency action

---

presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Beard v. Don McCue Chevrolet, Inc.*, No. 09 C 4218, 2012 WL 2930121, at *5 (N.D. Ill. Jul. 18, 2012). Second, the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence. *Richmond v. Dart*, No. 11 C 0065, 2012 WL 6138751, at *1 (N.D. Ill. Dec. 11, 2012); *Johnson v. Hart*, No. 10 C 0240, 2011 WL 5509546, at *2 (N.D. Ill. Nov. 8, 2011).

[4] Plaintiff has provided no legitimate grounds for disputing Sheehy's affidavit. He could have no personal knowledge of what Sheehy did or did not do in the medical unit; his skepticism alone does not create a triable issue of fact. *See* Fed. R. Evid. 602 ("a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). Moreover, it is irrelevant whether Plaintiff was, in fact, ambulatory. What matters is that a correctional officer **told** Sheehy that Plaintiff was ambulatory.

was needed because Plaintiff's chronic back problems were "painful but not life threatening." [119-3] at 50.

On November 17, 2010, Plaintiff was evaluated by Williams, who, in turn, scheduled Plaintiff to see Defendant Ghosh again. [1] ¶ 70.

Plaintiff saw Ghosh two days later. *Id.* ¶ 71; [119-2] at 91-92. Ghosh ordered an x-ray of Plaintiff's back; this x-ray was also found to be "negative." (The record does not indicate for what problem, only that it was a "negative study.") See [119-2] at 81, 93-94; [119-3] at 44. By then, the swelling in Plaintiff's back evidently had gone down, as Ghosh remarked that, in order to properly assess the source of Plaintiff's back pain, he would have to see the swollen area on Plaintiff's spine as soon as the problem arose. See [1] ¶ 71. Plaintiff filed another grievance following his consultation with Ghosh. [119-2] at 96.

Plaintiff did not see Ghosh again after that date; Ghosh retired in March 2011. *Id.* at 95.

Plaintiff's back problems essentially consist of periodic episodes where he would have a sudden flare-up of his condition when he "tweaks" his back in a certain way. [119-2] at 82. Plaintiff experiences pain for a short amount of time, sees a doctor, obtains pain medication, and then the pain eventually subsides. See *id.* at 82-84. The pain generally lasts from a few days to up to two weeks before it subsides. See *id.* at 85. Plaintiff feels fine again until the next time that he wrenches his back and the cycle begins again. *Id.* at. 82. Plaintiff maintains that the medications he receives do not always alleviate his back pain or prevent flare-ups from occurring, but rather only help him to sleep. See i*d.* at 55, 84-85.

Plaintiff does not argue that either Ghosh or Zhang specifically refused to treat his back condition. See *id.* at 87. Instead, he contends that Zhang and Ghosh made cursory and

improper diagnoses and provided the wrong treatment. See *id.* at 87, 90; [1] ¶ 75. Plaintiff also takes issue with Defendants' failure to refer him to an outside orthopedic specialist. See [1] ¶ 75; [154] ¶ 34. Plaintiff additionally asserts that an MRI or CT scan might have revealed a soft tissue injury that x-rays could not detect. [154] ¶ 33. However, Plaintiff admits that he is not a physician and that he has no medical training. See *id.*; [119-2] at 70-71.

The statements of fact set forth in this opinion detail only Plaintiff's treatment for his back problems. Plaintiff's medical care at Stateville for his various ailments is the subject of some of his other pending lawsuits. See *Dobbey v. Randle*, Case No. 10 C 3965 (N.D. Ill.) (concerning eye care); *Dobbey v. Randle*, Case No. 11 C 0146 (N.D. Ill.) (headaches and ocular issues); *Dobbey v. Mitchell-Lawshea*, Case No. 12 C 1739 (N.D. Ill.) (dental needs); and *Dobbey v. Carter*, Case No. 12 C 9223 (N.D. Ill.) (knee problems).

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univs. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

## ANALYSIS

No material facts are in dispute, and Defendants have established that they are entitled to judgment as a matter of law. The record does not support an inference that any of the three remaining Defendants in this case violated Plaintiff's Eighth Amendment rights.

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the Defendant in question must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; see also *Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). In the case at bar, Plaintiff cannot satisfy the subjective prong.

### A. Plaintiff Arguably Had an Objectively Serious Medical Need

The Court will assume for summary judgment purposes that Plaintiff's back problems constitute a serious medical need. A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. See *Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007); *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

It should be noted that Plaintiff seems to throw out his back only once or twice a year; the complaint refers to three instances, each separated by five to fifteen months (March 2009, August 2009, and November 2010), when he had a flare-up. Nevertheless, Plaintiff's allegations of chronic and severe (though intermittent) pain suggest that he may have an objectively serious medical condition.

### B. No Deliberate Indifference

However, even accepting the proposition that Plaintiff's back problems are "serious," he cannot satisfy the subjective component. To establish deliberate indifference, a prisoner must demonstrate that the Defendant in question was aware of, and consciously disregarded, the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The fact that a prisoner has received medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir.

2005) (emphasis in original), or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, *1 (N.D. Ill. Jun. 17, 2011). The subjective element of deliberate indifference encompasses such conduct as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Roe*, 631 F.3d at 857 (citing *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)).

Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment." *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. at 97); *Echols v. Craig*, No. 11 C 6686, 2012 WL 2872449, *2 (N.D. Ill. Jul. 10, 2012). The Court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997); *Smith v. Dart*, No. 10 C 6395, 2013 WL 315742, at *8 (N.D. Ill. Jan. 28, 2013)(collecting cases).

In the case at bar, the record does not support a finding that Defendants provided medical care so deficient as to be actionable under 42 U.S.C. § 1983. Deliberate indifference requires a showing of "more than mere or gross negligence." *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (quoting *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000).

The required showing is "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Collins*, 462 F.3d at 762 (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)). To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety. *Matos*, 335 F.3d at 557. Here, Plaintiff has failed to offer evidence that would support a conclusion that any of the Defendants acted with deliberate indifference.

1. **Defendants Ghosh and Zhang**

Plaintiff has no triable claim against either Dr. Ghosh or Dr. Zhang. Plaintiff's grievance against the doctors boils down to his perception that they should have (a) done more to figure out what caused the flare-ups of his back rather than treating his symptoms, (b) referred him to an outside specialist, and (c) ordered an MRI or CT scan. But the record establishes that Ghosh and Zhang examined Plaintiff regularly, ordered periodic x-rays, prescribed pain medicine, issued low bunk and lay-in permits as needed, instructed Plaintiff to perform strengthening and stretching exercises, and authorized physical therapy. Plaintiff may disagree with the course of treatment chosen, but that disagreement is insufficient to demonstrate deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013–14 (7th Cir. 2006).

Plaintiff seems to believe that the right doctor or the right test could unearth a cause and cure for his back problems; unfortunately, medical science has not advanced that far. Back problems are notoriously difficult to address. It must be emphasized that an inability to effect a final cure does not necessarily support a finding of deliberate indifference. See *Lieberman v. Budz*, No. 00 C 5662, 2010 WL 3522998, *1 (N.D. Ill. Sep. 2, 2010) (citing *Snipes v. DeTella*,

95 F.3d 586 (7th Cir. 1996)). "[T]he Eighth Amendment does not require that prisoners receive 'unqualified access to health care * * * Rather, they are entitled to only adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (internal punctuation and citations omitted); see also *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

Plaintiff was not constitutionally entitled to the treatment of his choice. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Nor did he have a constitutional right to see a specialist. *See Kendrick v. Frank*, 310 F. App'x 34, 38 (7th Cir. 2009); *Randle v. Mesrobian*, 165 F.3d 32, at *3 (7th Cir. 1998) (unpublished) (collecting cases); *Johnson v. Raba*, No. 93 C 2285, 1997 WL 610403, *3 (N.D. Ill. Sep. 24, 1997) ("[A] prisoner has no categorical right to be treated by a specialist."). Plaintiff has provided no admissible evidence to support his contention that an MRI, CT scan, or evaluation by an orthopedic specialist was warranted. Plaintiff has not shown that doctors' treatment decisions in this case "demonstrate[d] an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Roe*, *supra*); see also *Ortiz v. Webster*, 655 F.3d 731, 737 (7th Cir. 2011) ("[A] reasonable response to a medical risk * * * can never constitute deliberate indifference.").

Although Plaintiff is generally dissatisfied with the overall quality of his medical care, the totality of that care negates an inference of deliberate indifference. "There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on

-15-

prevailing standards in the field." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). A prison physician is generally free to determine the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards. *Id.* (citations omitted). Based on the comprehensive and ongoing care Plaintiff received, no reasonable person could find that either Defendant Ghosh or Defendant Zhang withheld medically necessary care. Particularly given the sporadic nature of Plaintiff's back issues, Defendants' conservative course of treatment did not reflect deliberate indifference.

### 2. Defendant Sheehy

Plaintiff likewise has no triable claim against Defendant Sheehy. Plaintiff's sole claim against Sheehy arises from the two-day delay in treatment following the November 15, 2010, flare-up of Plaintiff's back pain. See [119-2] at 113. Plaintiff takes the position that he should have been taken to a doctor that very day. See *id.* at 117. However, Plaintiff effectively seeks to impose his preference over Sheehy's exercise of his professional judgment.

Sheehy determined that because Plaintiff was ambulatory, a recurrence of his chronic back issues did not constitute an emergency. The Court is aware of no authority holding that inmates are entitled to medical care on demand. To the contrary, as discussed in preceding paragraphs, inmates are not constitutionally entitled either to "demand specific care" or even to receive the "best care possible;" rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Arnett*, 658 F.3d at 754 (citing *Forbes*, 112 F.3d at 267).

Inmates, like non-incarcerated individuals, must sometimes wait to see a doctor to address non-emergency medical matters.

This case does not present a situation where a health care professionally simply relied on a departmental rule. In *Arnett*, the Court of Appeals ruled that substituting one medication for the inmate's prescribed medication solely because the prescribed one did not appear on the Bureau of Prisons' approved list might constitute deliberate indifference if the medical professional chose "an easier and less efficacious treatment without exercising professional judgment." 658 F.3d at 754. Here, in contrast, Sheehy reviewed Plaintiff's medical records, ensured that Plaintiff had a prescription for pain medication in place, and put him on the "sick call" list. Even though Plaintiff suffered for more than two hours before the pain abated, he has failed to make a triable showing that Sheehy acted with deliberate indifference to an objectively urgent need for medical care.

In sum, all three remaining Defendants have demonstrated that they rendered constitutionally adequate medical care, while Plaintiff has failed to adduce evidence tending to substantiate his adverse claim. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594–595 (7th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted)). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where [as here] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris* 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)) (internal punctuation omitted). Plaintiff has failed to meet his summary judgment burden, either for defeating Defendants' motion or prevailing on his own cross-motion. *See Continental Datalabel, Inc. v. Avery Dennison Corp.*, No. 09 C 5980, 2012 WL 5467667, at *14 (N.D. Ill. Nov. 9, 2012) (granting defendant's summary judgment motion and concluding that "[i]t necessarily follows that [the plaintiff's] cross motion for summary judgment on liability * * * is denied").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to file additional facts [179] is granted, Defendants' motions for summary judgment [118] & [122] are granted, and Plaintiff's cross-motions for summary judgment [160] & [169] are denied. The record does not support an inference that prison health care providers acted with deliberate indifference. The Court is satisfied that, even viewing the record in the light most favorable to Plaintiff, no reasonable person could find that Defendants acted with deliberate indifference to his serious medical needs. The Clerk is directed to enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 56. The case is terminated.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave

to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the full appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

Dated: September 10, 2013

_____
ROBERT M. DOW, JR.
United States District Judge